UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Star Auto Sales of Bayside, Inc., Star Auto Sales of Queens LLC, Star Hyundai LLC, Star Nissan LLC, Metro Chrysler Plymouth Inc., Star Auto Sales of Queens County LLC, Star Auto Sales of Queens Village LLC,<br><br>     Plaintiffs,<br><br>  v.<br><br>Rosenfield & Company, PLLC,<br><br>     Defendant. | 23-cv-04912 (NRM) (RML)<br><br>**<u>MEMORANDUM AND ORDER</u>** |

NINA R. MORRISON, United States District Judge:

  Star Auto Sales of Bayside, Inc., Star Auto Sales of Queens LLC, Star Hyundai LLC, Star Nissan LLC, Metro Chrysler Plymouth Inc., Star Auto Sales of Queens County LLC, and Star Auto Sales of Queens Village, LLC (collectively "Plaintiffs" or "Star Auto Group") bring claims against Rosenfield & Company, PLLC ("Defendant" or "Rosenfield") relating to three contracts between the parties. The first contract, which is dated April 20, 2017, contains a forum selection clause that requires "any actions that may arise" to be brought in the Middle District of Florida. Apr. 20, 2017 Contract at 3, ECF No. 18-4. The second contract, which is dated May 25, 2017, appears to only have been informally memorialized in emails indicating that the parties wished to continue the relationship established in the April 20, 2017 contract but with an altered payment structure. May 25, 2017 Email, ECF No. 18-10. The

third contract is dated March 8, 2019.  Am. Compl. at ¶ 59, ECF No. 10.  Plaintiffs bring claims alleging breach of all three contracts, as well as fraudulent misrepresentation.

Defendant now moves to transfer this action to the Middle District of Florida or, in the alternative, to dismiss Counts I-IV and VI of Plaintiffs' complaint (which allege breach of the April and May, 2017 contracts and fraudulent misrepresentation).  Mot. to Transfer or to Dismiss at 6, ECF No. 18-1.  For the reasons to follow, the Court grants Defendant's motion to transfer Counts I-IV and VI and, accordingly, declines to reach Defendant's motion to dismiss.

Within seven days of this order, the parties shall advise the Court by joint letter whether, in light of the fact that the remaining causes of action will be transferred to the Middle District of Florida, they consent to transferring Count V as well.  If the parties do not consent, the Court will set a schedule for the parties to file supplemental briefing as to Defendant's motion to transfer Count V.

## FACTUAL BACKGROUND[1]

In 2016, Plaintiffs discovered that one their office managers, Vivian Karouzakis, was embezzling money from them.  Am. Compl. at ¶ 17.  Plaintiffs discovered additional thefts committed by another office manager, Despina Theocharis, the following year.  *Id.* at ¶ 20.  In anticipation of litigation and to assist

---

[1] When addressing motions to transfer, "a court may consider material outside of the pleadings."  *Crede CG III, Ltd. v. 22nd Century Group, Inc.*, No. 16-cv-3103, 2017 WL 280818, at *8 (S.D.N.Y. Jan. 20, 2017).  Accordingly, the Court cites facts as alleged in Plaintiffs' complaint and the exhibits Defendant filed in support of its motion (including the April 20, 2017 engagement letter and May 25, 2017 communications).

in the criminal prosecution of Karouzakis and Theocharis, Plaintiffs decided to hire a forensic accountant to identify and uncover the extent of the employees' schemes and embezzlement.  *Id.*  Accordingly, Plaintiffs hired Defendant on April 18, 2017. *Id.* at ¶ 21.

## I.      April 20, 2017 Contract

On April 20, 2017, Plaintiffs and Defendant entered into an agreement under which Defendant agreed to provide forensic accounting services to Plaintiffs to support their anticipated civil litigation against their former employees.  *Id.* at ¶ 28. The contract states that Defendant typically receives a $50,000 retainer before commencing work, and that it charges $35,000 per week with at least four highly qualified staff working a full working week.  *Id.* at ¶¶ 29–30.  The contract further states that "the engagement could take as long as 2 months," and that Defendant would prepare schedules to assist in determining the amount of theft loss, perform a test for accuracy of the balance sheets, and conduct an internal control study of the accounting and computer systems.  *Id.* at ¶¶ 32–33.

The contract also includes the following forum selection and choice of law clause: "This engagement and any actions that may arise shall be governed by the laws of the State of Florida and be brought in the judicial districts in which the headquarters of Rosenfield and Company, PLLC is located."  Apr. 20, 2017 Contract at 3.  Defendant is headquartered in Orlando, Florida, Am. Compl. at ¶ 2, which is in the Middle District of Florida.  While the location of Defendant's headquarters is not included in the contract, the contract is written on Defendant's letterhead, which includes an address in Orlando, Florida.  Apr. 20, 2017 Contract at 2.

3

Plaintiffs paid the $50,000 retainer on April 24, 2017.  Am. Compl. at ¶ 34.  On May 3, 8, 15, and 22, Defendant issued invoices to Plaintiffs for services rendered in connection with the April 20, 2017 Contract.  *Id.* at ¶ 35.

Plaintiffs now allege that Defendant breached this contract by failing to work a full working week and to provide four highly qualified staff as set forth in the contract, improperly applying the $50,000 retainer and never returning it to Plaintiffs, failing to perform forensic accounting services in accordance with the agreement, and excessively and unreasonably billing Plaintiffs for its services (including billing for work not requested by Plaintiffs).  *Id.* at ¶¶ 44–47.

## II.   May 25, 2017 Contract

According to Plaintiffs, the April 20, 2017 contract terminated on May 24, 2017, and the parties entered into a new oral agreement with Defendant on or around May 25, 2017.  *Id.* at ¶ 37, 38.  They allege that pursuant to the May 25, 2017 contract, the parties agreed that Defendant would provide forensic accounting services to Plaintiffs to support their anticipated civil litigation against their former employees but did not agree to any other terms, including any forum selection or choice of law clauses.  *Id.* at ¶¶ 39–40.  Defendant disagrees with this characterization and argues that the May 25, 2017 contract merely amended the April 20, 2017 contract terms.  Reply Br. at 8, ECF No. 18-8.

Defendant filed the communications that appear to encompass the May 25, 2017 agreement as an exhibit to its motion.  That exhibit shows that Defendant's principal received an email indicating that Plaintiffs' principal had concerns with the

4

payments relating to the April 20, 2017 contract. May 25, 2017 Email. In response to that email, Defendant's principal wrote the following to Plaintiffs' principal:

> The engagement letter is for $35,000 per week for four staff. We charged one week at $21,000 when we worked a short week with three people. Last week was more people for same fee. The $25,000 was initially for three people. However, we can discount to the last two weeks at $25,000 per week. We still have $48,000 in wip after our $35,000 invoicing which we can use the retainer for. And discount the remaining balance. We are more interested in a long term relationship. If this is acceptable, we would reduce the last two invoices to $25,000 each and absorb the remaining WIP with the retainer. Going forward we can just invoice actual time at discounted rates.

*Id.* at 2. Pursuant to this contract, Plaintiffs paid Defendant approximately $400,000. Am. Compl. at ¶ 42. Plaintiffs terminated the contract on April 17, 2020. *Id.* at ¶ 43.

As with the April 20, 2017 Contract, Plaintiffs allege that Defendant breached the May 25, 2017 Contract by excessively and unreasonably billing for its services, failing to perform the forensic accounting work it was obligated to perform under the contracts, and billing for work not requested by Plaintiffs. *Id.* at ¶ 47. Plaintiffs contend that "the forensic accounting work performed by Rosenfield" under both the April and May, 2017 contracts, "was of such poor quality that Star Auto Group cannot use or rely on any of Rosenfield's work and caused Star Auto Group to retain other forensic accountants to perform the work that Rosenfield failed to perform, but for which Rosenfield was paid." *Id.* at ¶ 48. The complaint outlines numerous specific instances of Defendant's alleged misconduct, including Defendant's incorrect identifications of embezzlement schemes, *id.* at ¶ 50(j), and its failure to identify certain embezzlement schemes, *id.* at ¶ 50(i).

### III.    March 8, 2019 Contract

On or around March 8, 2019, Plaintiffs and Defendant entered into another agreement.  *Id.* at ¶ 59.  The March 8, 2019 Contract, which states that New York law governs any disputes arising from its terms, engaged Defendant to provide "investigation, prosecution, litigation support services, and expert testimony . . . with respect to any and all schemes committed or participated [in] by former employees [of Plaintiffs] including Douglas Filardo, Francine Filardo, Vivian Karouzakis, Despina Theocharis and Carmen Jones[.]"  *Id.* at ¶ 61.  The contract states that Defendant customarily receives a retainer of $15,000 before commencing work, which is billed against its work.  *Id.* at ¶ 64.  The hourly rates under the contract ranged from $130 to $550 per hour, though Defendant never issued any invoices under the contract.  *Id.* at ¶¶ 62–63.

Pursuant to this contract, Plaintiffs paid Defendant a $15,000 retainer.  *Id.* at ¶ 65.  In this action, Plaintiffs contend that the retainer must be refunded to them in full because Defendant did not perform any work under the contract.  *Id.* at ¶¶ 66–69.  Plaintiffs terminated the contract on April 17, 2020 and have demanded the return of the $15,000 retainer, but Defendant has declined to return it.  *Id.* at ¶¶ 70–73.

### PROCEDURAL HISTORY

On April 30, 2021, Defendant filed a separate lawsuit (the "SDNY action") against numerous parties, including Plaintiffs, in the United States District Court for the Southern District of New York.  *Id.* at ¶ 10.  In the SDNY action, Defendant alleged breach of an October 24, 2019 contract.  *Id.*  Plaintiffs asserted various

6

counterclaims. *Id.* at ¶ 11.  On December 19, 2022, the court dismissed the SDNY action for lack of complete diversity. *Id.* at ¶¶ 2–9, ¶ 11.

On May 25, 2023, Plaintiffs commenced this action in the Supreme Court of New York, County of Queens.  Notice of Removal, ECF No. 2.  Defendant removed the case to this Court on June 30, 2023.  *Id.*  Plaintiffs then filed an amended complaint ("complaint") against Defendant on August 4, 2023.  Am. Compl.  Plaintiffs' complaint alleges that Defendant breached the April 20, 2017 contract (Count I), *id.* at ¶¶ 74–76, the May 25, 2017 contract (Count II, breach of contract; Count III, breach of implied contract; Count IV, breach of quasi contract), *id.* at ¶¶ 77–89, the March 8, 2019 contract (Count V), *id.* at ¶¶ 90–92, and engaged in fraudulent misrepresentation (Claim VI, in the alternative to the breach of contract claims), *id.* at ¶¶ 93–100.  These are the same claims Plaintiffs filed as counterclaims in the SDNY action. *Id.* at ¶ 12.

On December 13, 2023, Defendant filed a fully briefed motion to transfer the action to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a) or, in the alternative, to dismiss Counts I-IV and VI.  Mot. to Transfer or to Dismiss.

## DISCUSSION

Defendant argues that the case should be transferred to the Middle District of Florida based on the April 20, 2017 contract's forum selection clause, which states: "This engagement and any actions that may arise shall be . . . brought in the judicial districts in which the headquarters of Rosenfield and Company, PLLC is located."

Apr. 20, 2017 Contract.  In the alternative, Defendant argues that Counts I-IV and VI should be dismissed as time-barred.

As explained below, the Court concludes that the forum selection clause mandates the transfer of Count I, and that Counts II-IV and VI should be transferred pursuant to the 28 U.S.C. § 1404(a) factors.  Accordingly, the Court need not reach Defendant's arguments in support of dismissal.

## I.    Legal Standard

Motions to transfer venue from an otherwise proper forum are governed by 28 U.S.C. § 1404(a), which states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).[2]  In a case "[w]here the parties agree an action *could* have been brought in the transferee district, the court must determine that transfer is an appropriate exercise of its discretion."  *Crede CG III, Ltd. v. 22nd Century Grp., Inc.*, No. 16-cv-3103, 2017 WL 280818, at *8 (S.D.N.Y. Jan. 20, 2017).

In so doing, courts generally consider "private interest factors," including:

> The relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious, and inexpensive.

---

[2] "When the district court initiating the transfer is not the proper venue of the action, [28 U.S.C.] § 1406 governs[.]"  *Wohlbach v. Ziady*, No. 17-cv-5790, 2018 WL 3611928, at *3 (S.D.N.Y. July 27, 2018).  Here, the parties do not dispute that venue is proper in the Eastern District of New York.

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981) (citations and internal quotation marks omitted).  Courts also consider "public interest factors," which include:

> administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Id.* (citations and internal quotation marks omitted).

However, the calculus changes "[i]n cases involving forum selection clauses" because "parties who agree to a forum selection clause 'waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.'" *Crede CG III*, 2017 WL 280818, at *9 (citations omitted).  Accordingly, "where parties have entered into a valid forum selection clause, that clause 'should be given controlling weight in all but the most exceptional circumstances.'" *AGL Indus., Inc. v. Cont'l Indem. Co.*, No. 17-cv-4179, 2018 WL 3510387, at *4 (E.D.N.Y. July 19, 2018) (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 58 (2013)).

To determine whether to enforce a forum selection clause, the Second Circuit asks whether "the party moving under § 1404 can demonstrate that: (i) the clause was reasonably communicated to the party challenging enforcement; (ii) the clause is mandatory, rather than permissive, in nature; and (iii) the clause encompasses plaintiff's claims." *Crede CG III*, 2017 WL 280818, at *9.  "If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and

parties involved in the dispute, it is presumptively enforceable." *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014). "An opposing party must (iv) make a 'sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching,' to rebut this presumption." *Crede CG III*, 2017 WL 280818, at *9 (quoting *Martinez*, 740 F.3d at 217).

## II.    Application

The Court separately addresses the propriety of transfer as to Count I, Counts II, III, IV, and VI, and Count V.

### A.    Breach of April 20, 2017 Contract (Count I)

Plaintiffs argue that the forum selection clause in the April 20, 2017 contract is not enforceable and that Defendant waived the clause by initiating the SDNY action against Plaintiffs. Opp'n Br. at 10–12, ECF No. 18-7.

#### i.    Enforceability

The April 20, 2017 contract's forum selection clause states: "This engagement and any actions that may arise shall be . . . brought in the judicial districts in which the headquarters of Rosenfield and Company, PLLC is located." Apr. 20, 2017 Contract at 3. Plaintiffs argue that the clause is not presumptively enforceable because Defendant cannot demonstrate that "the clause was reasonably communicated to the party challenging enforcement." *Crede CG III*, 2017 WL 280818, at *9. According to Plaintiffs, because the clause states that any actions must "be brought in the judicial districts in which the headquarters of Rosenfield and Company, PLLC is located," Apr. 20, 2017 Contract at 3, and the contract does not

identify the Middle District of Florida as the district where Defendant is headquartered, the clause was not reasonably communicated to them.  Opp'n Br. at 11.

"A forum selection clause may be deemed 'reasonably communicated' where '[t]he clause at issue . . . appear[s] as a standard section in the main body of [an] [a]greement signed by [plaintiff] and is phrased in both clear and unambiguous language.'"  *Ujvari v. 1stdibs.com, Inc.*, No. 16-cv-2216, 2017 WL 4082309, at *8 (S.D.N.Y. Sept. 13, 2017) (citation omitted).  Plaintiffs do not dispute that the forum selection clause here appeared as a standard section in the main body of the agreement they signed.  To the extent Plaintiffs argue that the clause was not phrased in clear and unambiguous language, the Court disagrees.

The forum selection clause in this case clearly states that any actions must be commenced in the district in which Defendant is headquartered.  And while the contract omits the location of Defendant's headquarters, there is no indication in the record that the location of Defendant's headquarters was at any time ambiguous or "susceptible of two reasonable meanings."  *John's Insulation, Inc. v. Siska Const. Co.*, 671 F. Supp. 289, 295 (S.D.N.Y. 1987).  Nor do Plaintiffs argue that they were at any time unaware of the district in which Defendant is headquartered.  For good reason — the contract was written on Defendant's letterhead, which includes an address in Orlando, Florida, and states that the contract "shall be governed by the laws of the State of Florida."  Apr. 20, 2017 Contract at 3.  Accordingly, the Court concludes that the forum selection clause was reasonably communicated to Plaintiffs.

Plaintiffs do not dispute that the forum selection clause "is mandatory, rather than permissive, in nature," and "encompasses plaintiff[s'] claims." *Crede CG III*, 2017 WL 280818, at *9.  This makes sense.  Courts have held that where, as here, a forum selection clause uses the term "shall," the clause will "typically" be treated as mandatory.  *See Carlisle v. Bd. of Trustees of Am. Fed'n of New York State Teamsters Conf. Pension & Ret. Fund*, No. 20-cv-8793, 2021 WL 1512702, at *4 (S.D.N.Y. Apr. 16, 2021).  Additionally, the clause's reference to "any actions that may arise" clearly encompasses a claim for breach of the April 20, 2017 contract.  Apr. 20, 2017 Contract at 3.

Because the forum selection clause here "was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable." *Martinez*, 740 F.3d at 217.  Accordingly, the Court must determine whether Plaintiffs can rebut this presumption by showing that "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Crede CG III*, 2017 WL 280818, at *9 (quoting *Martinez*, 740 F.3d at 217).  Plaintiffs have not made any such arguments here.  Instead, they dedicate much of their opposition brief to arguing that the § 1404(a) factors cut against enforcing the forum selection clause because the case has a strong nexus to New York.  Specifically, Plaintiffs contend that they are located in New York, Defendant has a New York office, Defendant's New York-based employees performed work under the contracts, and the witnesses and documents are located in New York.  Opp'n Br. at 12.

However, the Supreme Court has stated that in evaluating a motion to transfer based on a forum selection clause, courts "should not consider arguments about the parties' private interests" because "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 64 (2013). Accordingly, courts "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* The Court thus declines to consider Plaintiffs' arguments as to the location of witnesses and documents.[3]

Moreover, Plaintiffs have made no showing that the public interest factors — which the Court can consider in this context — disfavor transfer. As an initial matter, the public interest factors "will rarely defeat a transfer motion." *RGJP Enterprises, LLC v. Lele Franchising, LLC*, No. 14-cv-01911, 2015 WL 3440347, at *2 (D. Conn. May 6, 2015). But here, the factors are neutral at best. Because this "case involves a straightforward contract dispute," it "will not lead to 'administrative difficulties flowing from court congestion,'" and the issues in the complaint "do not raise localized

---

[3] Plaintiffs cite *Seneca Ins. Co v. Henrietta Oil Co.*, No. 02-cv-3535, 2003 WL 255317, (S.D.N.Y. Feb. 4, 2003), for the proposition that "even where a valid forum selection clause exists, courts have refused to transfer a case when the contracted forum has absolutely no connection to the claims." Opp'n Br. at 12–13. But that case, which held that "enforcement of the forum selection clause would be 'unjust'" because, in part, "[a]ll the significant contacts were with Texas," *Seneca Ins. Co.*, 2003 WL 255317, at *3, predated the Supreme Court's holding in *Atlantic Marine* that "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient . . .," *Atl. Marine Const. Co., Inc.*, 571 U.S. at 64.

concerns." *Id.* Therefore, Plaintiffs have not overcome the presumption that the forum selection clause is enforceable.

ii. <u>Waiver</u>

Plaintiffs also argue that Defendant cannot seek to enforce the forum selection clause because it waived the clause when it brought a separate action against Plaintiffs in the Southern District of New York. Opp'n Br. at 11–12.

"There is a strong public policy in favor of enforcing forum-selection clauses, and as such, waiver of a forum selection clause should not be found lightly." *E. Cap. Invs. Corp. v. GenTech Holdings, Inc.*, 590 F. Supp. 3d 668, 673 (S.D.N.Y. 2022) (citation omitted). Nevertheless, courts "may find that a party has waived enforcement of the clause when the party invoking it has 'taken actions inconsistent with it, or delayed its enforcement, and other parties would be prejudiced.'" *Id.* The issue of waiver of a forum selection clause is "fact specific," and "there is no bright-line rule for determining whether waiver has or has not occurred." *Wachovia Bank Nat. Ass'n v. EnCap Golf Holdings, LLC*, 690 F. Supp. 2d 311, 328 (S.D.N.Y. 2010).

"Courts have found implied waiver of venue where a party has repeatedly represented that venue is appropriate, or actively pursued substantive motions." *Ferraro Foods, Inc. v. M/V IZZET INCEKARA*, No. 01-cv-2682, 2001 WL 940562, at *4 (S.D.N.Y. Aug. 20, 2001) (internal citations omitted). For example, a party was precluded from enforcing a forum selection clause where it "availed itself of th[e] forum by attempting to implead third-party defendants and filing several affidavits, affirmations, and memoranda of law." *Am. Int'l Grp. Europe S.A. (Italy) v. Franco Vago Int'l, Inc.*, 756 F. Supp. 2d 369, 380 (S.D.N.Y. 2010). "In contrast, no waiver has

14

been found where parties merely participated in pretrial motions, moved to dismiss after discovery has been completed, or where the opposing party was not prejudiced by dismissal." *Ferraro Foods, Inc.*, 2001 WL 940562, at *4.

It is true, as Plaintiffs note, that Defendant filed suit against them in the Southern District of New York.  But that action was a separate lawsuit based on a different contract with Plaintiffs dated October 24, 2019.  SDNY Compl. at 5, ECF No. 18-12.  That action, on its own, is not inconsistent with Defendant's efforts to enforce the forum selection clause governing the April 20, 2017 contract in this action. In other words, by initiating a separate action relating to another contract, Defendant "never represented that this is the appropriate forum for the causes of action brought by [Plaintiffs]." *Diesel Props S.r.L. v. Greystone Bus. Credit II LLC*, No. 07-cv-9580, 2008 WL 4833001, at *15 (S.D.N.Y. Nov. 5, 2008).

Moreover, while Plaintiffs did raise counterclaims in the SDNY action that implicated the forum selection clause, Defendant's actions in response to the counterclaims do not rise to the level of waiver.  It appears Defendant engaged in some discovery in that case, but it did not "represent[] that venue [was] appropriate" or "actively pursue[] substantive motions." *Ferraro Foods, Inc.*, 2001 WL 940562, at *4.  Moreover, because Plaintiffs have failed to "make a specific showing that [they] will suffer prejudice from the clause's enforcement," *Kasper Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs. Inc.*, 952 F. Supp. 2d 542, 568 (S.D.N.Y. 2013), the Court holds that Defendant did not waive its right to enforce the forum selection clause.

### B.     Breach of May 25, 2017 Contract (Counts II, III, and IV) and Fraudulent Misrepresentation (Count VI)

The parties also dispute whether the forum selection clause applies to Plaintiffs' claims alleging breach of the May 25, 2017 contract and fraudulent misrepresentation.  However, the Court need not address this dispute "because even if [Plaintiffs are] correct" that these claims are not subject to the clause, they "must still be transferred under section 1404(a)."  *Pence v. Gee Grp., Inc.*, 236 F. Supp. 3d 843, 854 (S.D.N.Y. 2017); *see also Androb Jewelry Serv., Inc. v. Malca-Amit USA, LLC*, No. 16-cv-5171, 2017 WL 4712422, at *9 (S.D.N.Y. Sept. 25, 2017) (declining to address whether all claims in the action are governed by the forum selection clause because "transfer is warranted under § 1404(a).")

"When a mandatory forum selection clause governs some, but not all, of the parties or claims in a given case, courts in this district evaluate whether transfer of the remaining claims is appropriate under all of the § 1404(a) factors — both public and private." *JM Smith Corp. v. AstraZeneca Pharms. L.P.*, No. 19-cv-7233, 2020 WL 4605241, at *9 (S.D.N.Y. Aug. 11, 2020).[4]  The Court thus steps through an analysis of the relevant § 1404(a) private and public interest factors.

Courts in this Circuit consider a variation of the § 1404(a) factors described *supra* at 8–9.  Here, the Court follows the practice of this Circuit and considers:

---

[4] To the extent Plaintiffs contend venue in the Middle District of Florida would be improper, that is plainly incorrect.  Pursuant to 28 U.S.C. § 1391, "[a] civil action may be brought in [] a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  28 U.S.C. § 1391(b).  Defendant maintains its principal place of business in the Middle District of Florida, and venue is thus proper there.  *Id.* § 1391(c)(2).

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [] (7) the relative means of the parties . . . [,](8) the forum's familiarity with the governing law, and (9) trial efficiency and the interest of justice.

*Pence*, 236 F. Supp. 3d at 850.

### i.   Plaintiff's choice of forum

"Generally, courts give a plaintiff's choice of forum 'considerable weight.'" *JM Smith Corp.*, 2020 WL 4605241, at *9 (citation omitted).  But "where a plaintiff has agreed by contract to bring suit only in a specified forum as to some of the claims at issue, and the remainder of the claims are factually related, the plaintiff's choice of forum different from the contractual forum merits less weight." *Id.*  This factor thus weighs minimally against transfer.

### ii.   Convenience of witnesses

While Plaintiffs state that the witnesses are located in New York, neither party "specifies the key witnesses to be called or states what their testimony will cover." *In re Seroquel XR (Extended Release Quetiapine Fumarate) Litig.*, No. 19-cv-8296, 2020 WL 5587416, at *4 (S.D.N.Y. Aug. 12, 2020).  However, "[w]here, as here, Defendants seek transfer on account of several factors, their 'failure to specify key witnesses and their testimony is not fatal.'" *Id.*

Because the Court is already transferring Count I to the Middle District of Florida, transferring Counts II, III, IV, and VI will be convenient for the witnesses because, as explained *infra* at 19–20, it is likely that "[t]he testimony of most — if not all — . . . witnesses will pertain equally" across the Counts.  *Id.* at *5.  "[T]hose

witnesses will be spared much inconvenience by being called to testify in a single trial in a single location." *Id.* (citation omitted).  This factor thus favors transfer.

### iii.    Location of relevant documents

While some documents may be located in New York, "[i]n an era of electronic documents, easy copying and overnight shipping, [the location of relevant documents and ease of access to sources of proof] assumes much less importance than it did formerly." *Pence*, 236 F. Supp. 3d at 857.  Accordingly, this factor is neutral.

### iv.    Convenience of parties

Plaintiffs are located in New York and Defendant is located in Florida. Therefore, this factor is neutral.

### v.    Locus of operative facts

As a general matter, the locus of operative facts in contract cases "examines 'where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred.'" *Pence*, 236 F. Supp. 3d at 854–55 (citation omitted).  However, if, as here, "the main cause of action raised in the complaint was a breach of contract action arising from the defendant's [performance of the contract],' then 'the locus of operative facts [is] where the contract was performed, not where it was proposed or negotiated.'" *Id.* at 855 (citation omitted).  Plaintiffs argue, and Defendant does not dispute, that Defendant's New York-based employees performed the work under the contracts, "and all work under the contracts was performed in New York." Opp'n Br. at 16.  This factor thus weighs against transfer.

vi.   The availability of process to compel the attendance of unwilling witnesses

Because "[n]either party has listed witnesses, let alone any non-party witnesses, who may need to be subpoenaed[,] [] this factor does not affect [the Court's] analysis." *Pence*, 236 F. Supp. 3d at 857.

vii.   The relative means of the parties

The parties do not provide any information about their relative means. Accordingly, this factor does not impact the Court's analysis.

viii.   The forum's familiarity with the governing law

While the March 8, 2019 contract has a New York choice of law clause, the parties dispute whether Florida or New York law governs Plaintiffs' remaining claims (Counts II, III, IV, and VI). The Court need not resolve this dispute because "even if [New York] law governs this dispute, the legal issues involve relatively unexceptional questions of contract and fraud," and a Florida "court will be capable of applying it." *S-Fer Int'l, Inc. v. Paladion Partners, Ltd.*, 906 F. Supp. 211, 215–16 (S.D.N.Y. 1995); *see also Am. All. Ins. Co. v. Sunbeam Corp.*, No. 98-cv-4703, 1999 WL 38183, at *8 (S.D.N.Y. Jan. 28, 1999) (holding that "there is no reason to believe that Florida contract law would be difficult for [a New York court] to apply."). Indeed, Plaintiffs themselves recognized that "[t]he elements for a breach of contract claim under Florida and New York law are the same." Opp'n Br. at 19. This factor is therefore neutral.

ix.   Trial efficiency and the interests of justice

"[N]umerous courts have held[] [that] the fact that [a] forum selection clause indisputably governs [some] of the claims in [a] case, and that the remaining claims

are factually related to those [] claims, weighs strongly in favor of transfer." *JM Smith Corp.*, 2020 WL 46005241, at *10 (some alterations in original) (quoting *Androb Jewelry Serv. Inc.*, 2017 WL 4712422, at *9). As discussed *supra* at 10–15, Plaintiffs' claim for breach of the April 20, 2017 contract "must be transferred as a result of the forum selection clause." *Pence*, 236 F. Supp. 3d at 854. And because Plaintiffs' claims for breach of the May 25, 2017 contract and fraud "rely on essentially the same facts" as the April 20, 2017 breach of contract claim, "[c]oncerns of trial efficiency and the interest of justice weigh overwhelmingly in favor of transfer." *Id.*

Based on the documents attached to Defendant's motion to dismiss, it appears that the April 20, 2017 contract set forth the basic terms of the services that Defendant would provide under both the April 20, 2017 contract and the May 25, 2017 contract. On May 25, 2017, the parties simply agreed to continue the relationship set forth in the April 20, 2017 contract on a longer-term basis and with a different pay structure. Plaintiffs' complaint bolsters this conclusion, as it relies on many of the same allegations — including that Defendant "excessively and unreasonable bill[ed] Plaintiffs for its services," "faile[d] to perform the forensic accounting work it was obligated to perform under th[e] contracts," and "bill[ed] for work not requested by" Plaintiffs, Am. Compl. ¶ 47 — to establish Defendant's breach of both the April 20, 2017 and May 25, 2017 contracts.

Plaintiffs' fraud claim is similarly entwined with their claim for breach of the April 20, 2017 contract. It is pled in the alternative to Plaintiffs' breach of contract

claims and relies on some of the same allegations that form the basis of Plaintiffs'
claims for breach of the April 20, 2017 and May 25, 2017 contracts.  For example,
Plaintiffs allege that Defendant falsely informed them "that certain theft schemes
occurred which did not occur," *id.* ¶ 96(a), in support of both their fraudulent
misrepresentation claim, *id.*, and their claims for breach of the April 2017 and May
2017 contracts, *id.* at ¶ 50(b).

Although these claims may not be "identical, there will unavoidably be
significant overlap in the relevant evidence and witnesses, as reflected in [Plaintiffs']
decision to bring" them in one action. *Bent v. Zounds Hearing Franchising, LLC*, No.
15-cv-6555, 2016 WL 153092, at *6 (S.D.N.Y. Jan. 12, 2016).  "Under these
circumstances, transfer will 'substantially advance[] the interests of fairness,
efficiency and judicial economy' by preventing duplicative proceedings, avoiding
inconsistent results, and 'reducing the overall burden on the parties, non-party
witnesses and the judicial system.'" *Id.* (citation omitted).  Accordingly, this factor
strongly favors transfer.

*          *          *

In summary, while certain factors are neutral or slightly weigh against
transfer, the interest in trial efficiency strongly favors transfer.  Simply put, "it would
be extremely wasteful to litigate nearly identical claims in two separate fora." *Pence*,
236 F. Supp. 3d at 857.  The Court thus determines that transfer of Counts II, III, IV,
and VI pursuant to § 1404(a) is appropriate.

### C.      Breach of March 8, 2019 Contract (Count V)

The propriety of transfer as to Plaintiffs' March 8, 2019 breach of contract claim presents a closer question.  Unlike the May 25, 2017 contract, the March 8, 2019 contract did not clearly arise from the April 20, 2017 contract.  And Plaintiffs' allegations as to Defendant's breach of the March 8, 2019 contract do not rely on the same instances of nonperformance as Plaintiffs' other claims.  Rather, they rely on Defendant's failure to return Plaintiffs' $15,000 retainer.  Am. Compl. at ¶¶ 64–73. Accordingly, though transfer may ultimately be appropriate under § 1404(a), it is less clear if trial efficiency and the interests of justice strongly favor transfer of Count V.

In their opposition brief, Plaintiffs contend that "[u]nder § 1404(a), courts must transfer the entire action."  Opp'n Br. at 16.  While that principle is generally correct, Plaintiffs fail to recognize that if transfer of Count V is not appropriate under § 1404(a), the Court may sever that claim, create two separate actions, and transfer only Counts I-IV and VI to the Middle District of California.  *See Crede CG, Ltd.*, 2017 WL 280818, at *10 (holding that trial courts have discretion to sever individual claims, transfer certain claims, and retain jurisdiction over others).

Although Plaintiffs opposed the motion to transfer in its entirety, now that the Court has ordered the transfer of the remaining counts, they may agree that it would be inefficient or otherwise disadvantageous for them to litigate two separate actions in two different fora against this same Defendant.  Accordingly, within seven days of this order, the parties shall confer and file a joint letter informing the Court whether they consent to transfer of Count V to the Middle District of Florida.  If the parties do not both consent, the Court will set a schedule for the parties to submit

supplemental letter briefs as to whether Count V should be transferred to the Middle District of Florida or severed and remain in this district.

The Court defers ruling on Defendant's motion to transfer Count V until it can consider the parties' respective positions. The Court will not effectuate the transfer of Counts I-IV and VI until it resolves Defendant's motion as to Count V.

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion to transfer Counts I-IV and VI and reserves decision as to Count V. The transfer of Counts I-IV and VI shall be deferred pending resolution of the entire motion.

SO ORDERED.

_/s/ NRM_

NINA R. MORRISON
United States District Judge

Dated: July 9, 2024
         Brooklyn, New York